The next case this morning is 22-1131 Stephen Levine v. Grubhub Holdings, et al. Attorney Liz Reardon, Attorney Evangelist. Attorney Liz Reardon, could you introduce yourself to the court? She's already done that. Let's proceed. Thank you, Judge. Attorney Evangelist, you can mute your audio and video. Attorney Liz Reardon, please proceed with your argument. Thank you, Your Honors. I'm still Shannon Liz Reardon representing the plaintiffs. There's some related points that I'd like to make in this argument. First, I want to address the Archer case from the SJC as well as some of the other cases that were touched on briefly in the last argument. In the Archer case, first of all, of course, this court isn't bound by what a that it doesn't have to be the same company that is responsible for the full interstate journey as the last mile. The Archer case erred in saying that the goods were destined for the restaurants, not the customers. I mean, it just doesn't make sense to say that goods are destined to restaurants. It's just the same thing as saying that computers are destined for Amazon warehouses rather than the customers who are going to use those computers. It doesn't make sense. It doesn't fall under the Supreme Court's holding in Walling. The other point that I want to make here, and this is raised in both cases in the briefs, is the second argument we've made, which is the interaction between interstate commerce in Section 1 and in Section 2 of the FAA. Now, we know that in Circuit City, the Supreme Court said that interstate commerce is broader for Section 2 than for Section 1. None of the courts have grappled with the point that the Supreme Court more recently in the Olivera v. New Prime case said that interstate commerce in Section 1 and Section 2 should be read in relation to one another, which, if anything, may undermine Circuit City's distinction between the two. There's been no discussion of that issue. But even if there is still some distinction between in interstate commerce or affecting interstate commerce, which is broad under Section 2, and engaged interstate commerce, which has been recognized to be more narrow in Section 1, there needs to be some dividing line. The answer can't simply be, well, you always have interstate commerce for Section 2, but you never have interstate commerce for Section 1, particularly when the Supreme Court has now said that the two should be read in relation to one another. So, my point— Counsel, okay. The Supreme Court did not, at the same time, say, well, we want you to read them in relation. We're overruling our prior case that draws a distinction. So, why do you think that statement undermines the prior cases drawing a distinction between the two? Why does it logically follow? Well, that's exactly what I'm saying, is that the Court did not explicitly say it was overruling Circuit City on that point, but it did say they should be read in relation to one another, which one can read as changing the law from what was said in Circuit City. So, that's one possibility. Another— Circuit City says you don't read them in relation to each other? Circuit City said that interstate commerce is broader under Section 2 than under Section 1, where it's engaged and has a different meaning than affecting or in commerce. That's right. But all I'm saying is that with the nuance that the Supreme Court added in new prime, that they need to be read in relation—it can either be read as undermining Circuit City's distinction between the two, or at the very least, saying that they need to be read in relation to each other, which goes to my next point, that even if they are still different, the answer can't just be you always have interstate commerce for Section 2, you never have it for Section 1. There has to be some dividing line. So, if we look at this case, why is it that it should be divided? I could imagine a situation in which there's one kind of interstate commerce you're talking about, which is very broad for purposes of Section 2, but another aspect of interstate commerce needs to be considered for purposes of Section 1. But in this case, it's the same interstate commerce we're talking about. So, the drivers, they're either engaged in or in interstate commerce, or they're not, because there's only one type of—the only possible way that Congress had the power to regulate this under the FAA is if there was interstate commerce. The only possible interstate commerce here is the movement of goods across state lines. So, that either is or it isn't. Counsel, Circuit City tells us what the distinction is, that Section 2, involving interstate commerce, is Congress's attempt to exercise the full extent of the power that Congress has under the Commerce Clause. Engaged in interstate commerce is a lesser scope, and there's nothing in new prime that alters the Circuit City formulation. The Supreme Court is perfectly capable of telling us when they abrogate or want us to disregard their prior precedent and to read an intention to abrogate into a statement that the two have to be read in relation to each other. That would be equivalent to what one of the justices recently called attempting to hide an elephant in a mousetrap. So, again, Your Honor, as I've been saying, even if new prime did not abrogate this distinction from the Circuit City case, there needs to be some dividing line. And here, the only possible way that Congress had the power to regulate these drivers under the FAA is if the goods that are being transported by them are in interstate commerce. So, again, if those goods are in interstate commerce, and thus this is interstate commerce for purposes of Section 2, why doesn't that movement of goods constitute interstate commerce for purposes of Section 1? Again, you can't just say you don't have it for the same interstate commerce. No, but the workers themselves under Section 1 have to be engaged in interstate commerce. Or for purposes of Section 2, the work, the transaction merely has to involve interstate commerce. In one case, you're focused on the workers. In the second, you're focused on the transactions. Well, but then, again, Your Honor, respectfully, that would sound as though that means that the workers themselves have to cross the state lines, which we know from my FACA is not the case. I don't think that's what— No, it doesn't mean that. It doesn't mean that at all. Well, I'm not sure what the distinction then is between 1 and 2, the interstate commerce in 1 and 2, under what Your Honor is saying. The question under 1 is whether the workers are engaged in interstate commerce. You have no limiting principle. You want us to hold that simply because the goods have moved at some point in interstate commerce, the workers are engaged in interstate commerce. All right? No court that I know of, including the Wysocka Court, has held that. But that— But, again, Your Honor— I'm leaning from the argument what you want us to hold. You want us to make a decision in this case that reaches far beyond the scope of any of the reported cases. Your Honor, again, I'm not seeing—I'm not seeing how there is any distinction here from Wysocka. I know we've been discussing this, but goods don't come to rest at restaurants just as goods don't come to rest in warehouses. They're intended for the user, the consumer. What about consistent transaction? Isn't that the unitary transaction in an Amazon worker versus a restaurant buying a case of chips from a manufacturer? There's one transaction in the first case, and there are many in the second case. So that's where the point that I've been making comes in about in Wysocka, this court saying it doesn't matter if it's the same company engaged in the whole thing. So let's say, for example, in the Amazon case— No, but wait. Respectfully, go back to my question, which is, it's the original intent of the transaction. It doesn't matter how many companies are involved. Isn't it the original origin of the transaction that eventually it's going to get to an end user in the Amazon order? Yes. So, for example, if I could just say, let's just say there is a—I'm just thinking about a—I'm thinking about this company Ulta, which sells makeup. Okay. So you have goods that are delivered from out-of-state to the store, makeup, that's then purchased by customers. Okay. So the delivery of these goods, there's no difference between them being delivered to the store, which are then purchased by the store, and then delivered to the customers. There's no difference just because there are different entities involved in different legs of the journey. So that's why I don't see any difference just because in the Grubhub and Postmates cases, the fact that you have all kinds of shippers involved in the interstate movement of the food products to the restaurants, and then a different company responsible for the last-mile transportation, that's no different from what would fall under YFACA is if you've got different companies getting products to a store, and then a separate company engaged in last-mile transaction. Let's just say there's a delivery company that sends the makeup products to someone's home. Again, I just don't see any difference. They don't just deliver food. They deliver products from places like Bed Bath & Beyond. There's just no difference from the Amazon situation. And just because Amazon is the company that's engaged in what you're calling unitary delivery or the unitary transportation, that's just not in this court. In YFACA, the court said it doesn't matter whether the company is the one engaged in the full interstate commerce. No, the court did not say that. It merely was clarifying what its holding was. All right. We're getting a bit repetitive at this point. Do you have a different point you'd like to make? Okay. I know, Your Honor, that you're saying I'm being repetitive, but I'm just quoting from YFACA. We do not hold that a class of workers must be employed by an interstate transportation business. So my other point is that the other courts in the last argument, defense counsel pointed out other courts that have found there not to be interstate commerce. I would ask the court to consider the arguments that I've made that those courts have improperly applied YFACA. They have assumed that somehow the end destination is the restaurant and not the person who's actually going to consume the products. They've not grappled with this distinction that I'm discussing between what interstate commerce means in section one and section two. They have relied on the ride share cases, Cunningham versus Lyft and the Capriol case from the Ninth Circuit, which turned on very different issues involving the Supreme Court's yellow cab decision and whether passengers are in interstate commerce. I think those are my rebuttals in this case, but I would respectfully ask for a little bit of rebuttal time. Yes, we will certainly give you two minutes rebuttal. Okay, we'll hear from your opponent now. May it please the court. May it please the court, D.N.A. Evangelist on behalf of Grubhub. I do not want to repeat all of my arguments from the earlier case, and I would like to incorporate them all, but I will try to focus on the arguments that plaintiff's counsel has made in this argument. That's primarily the argument that somehow section one should be interpreted coextensively with section two. Of course, the exception would swallow the rule completely if this court were to agree. No court has ever adopted that view. Of course, the Supreme Court told us in Circuit City that it's wrong. Section one is a narrow exception, and involving commerce is very different from being engaged in commerce, as Judge Salia pointed out earlier. Here, we have a very different situation. In the Hamrick case from the Eleventh Circuit and from the Massachusetts Supreme Judicial Court, all of these courts recognize that section one and section two are not coextensive. Of course, under the broadest commerce powers of Congress, which is what plaintiff's counsel is advocating for today, even the wheat farmers in Wickard v. Filburn would be covered. Going back, Judge Lynch, to your example, this is exactly the same situation that she's asking for, where the local farmers, even when they deliver products, those deliveries would be covered by the section one exemption. This is, again, a very broad interpretation. No court has adopted it. It would sweep in numerous categories of workers whose occupations have nothing to do with interstate commerce. The court's decision in Wallace at page 802 to 803 talks about this, and it's exactly right. Also, I want to go back to Judge McElroy. You brought up the unitary transaction. That is the right way to look at the Amazon last mile cases. That's why those came out differently, and that's every court has agreed. Here, we have Grubhub delivery drivers as the class of workers, delivery drivers who use the Grubhub app. Those drivers have been held not to fall within section one now, not only by Judge Barrett's decision in Wallace v. Grubhub, but also by the Massachusetts Supreme Judicial Court. Of course, it would be an untenable situation if the FAA applied in state court but not in federal court as to the very same individuals. That's what plaintiff is advocating for here. As to this unitary transaction, I take it it would be an objective test. Let's suppose that Amazon uses a number of different delivery companies to deliver products to their warehouses. All Amazon does at that point is deliver it to the end customer from the warehouse. Would that make any difference? If Judge Lynch, if the product, when it's being shipped into the state from out of state, is intended for the ultimate recipient of that last mile trip, then I think under this I don't think it has to be the same. What I'm probing are the limits of our prior decision. The assumptions that were made in the decision which your opposing counsel has focused on. I understand the logic of it. I'm just trying to see whether there is any kind of exception to this unitary transaction notion. I don't think there is, Judge Lynch, when there is a transaction that's orchestrated and is intended for the state consumer, then that transportation falls within Section 1. I think that's what this court said in Wythaka, like the Ninth Circuit in Rittman. I think the Archer decision does a great job of distinguishing the two types of scenarios. That's really the best articulation of it. That's at pages 132 to 133. The court distinguished what you're focusing on, I think, is whether it has to be the same company. I think it may not have to be if that final leg under this court's Wythaka decision, if that last leg is part of the overall broader journey. It's just the implications of this theory are that then the megaliths in the world economy, which arrange from cradle to grave or from origin to customer, become subject to the exception and face different economic consequences as a result as to disputes than the smaller companies. I'm just trying to think through the economic implications of the various questions we have in front of us. Also, it's always been the case that courts have looked at it in this way. If you look at the Yellow Cab decision, again, the railroads were coordinating the transportation between the railroad stations. This court explained in Cunningham that, and I don't think there's any difference between passengers versus goods. It's the same analysis. The passengers there were part of that broader orchestrated trip, whereas in the Cunningham case, the passengers using the Lyft app could have used any other form of transportation that was an independent transaction. The airline did not coordinate the local ride as part of one ticket, as part of one trip. That would have made the result different, I think, under this court's analysis, the way the court was looking at it there. It's the same limiting principle that we're advocating here. It's the same one that every court has agreed with thus far. Thank you. Are there further questions from my colleagues? No. Thank you. Thank you. We would ask that the court affirm the decision below. Thank you. Yes. Thank you, Your Honors. Judge Lynch, in your search for a limiting, the way you described a limiting principle, in Wythaka, it sounds like defendant is trying to claim that there is a the goods that were ordered in advance by a customer and only temporarily stopped at the warehouse versus the goods that stayed in the warehouse for 18 months while Amazon waited for someone to order them. No, no, no. She did not argue that. I'm just posing different hypotheticals. Right. I just want to say that in Wythaka, this court didn't make any such distinction, and the Supreme Court denied cert in that case. But a denial of cert is not an affirmance. It's merely a denial of cert. Yeah, yes. But again, it's the law of the circuit that there was no distinction that was made. And if I could just briefly, as my final thing, in the Wallace case, and I believe many of the courts, including Archer, relied on Wallace. And again, Wallace's Seventh Circuit, not this First Circuit principle. If I can just quote one portion of the decision, it's on, I believe, page 802. The plaintiffs, in today's case, however, completely ignore the governing framework. Rather than focusing on whether they belong to a class of workers actively engaged in the movement of goods across interstate lines, the plaintiffs stress that they carry goods that have moved across state and even national lines. Package of potato chips, for instance, may travel across several states before landing in a meal prepared by a local restaurant and delivered by a Grubhub driver. The plaintiffs insist that delivering such goods brings their contracts within Section 1. As they see it, the residual exemption is not so much about what the worker does as where the goods have been. But to fall within the exemption, the workers must be connected not simply to the goods, but the act of moving these goods across state or national borders. It seems clear from that passage that Wallace seemed to indicate that the workers had to cross state lines, which is not the law in the First Circuit, in my thought. Thank you. Okay. Thank you. That concludes our argument in this case. Attorney Lisserer and Attorney Evangelos, you should disconnect from the hearing at this time.